319 F.3d 1073
 Mohamed Osman Elsayed MUKHTAR, Plaintiff-Appellee,
v.
CALIFORNIA STATE UNIVERSITY, HAYWARD, a public entity, Carlos Navarro and Norma Rees, employees of the California State University in their Official and Individual Capacities, Defendants-Appellants.
 No. 01-15565.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 11, 2002.
 Filed August 7, 2002.
 Amended February 12, 2003.
 
 Fania E. Davis, Oakland, CA, argued the cause for the plaintiff-appellee and filed a brief; Darryl Parker, Seattle, WA, was on the brief.
 Felicia R. Reid, Curiale Dellaverson Hirschfeld Kelly & Kraemer, San Francisco, CA, argued the cause for the defendants-appellants and filed a brief.
 Oren M. Sellstom, Susan K. Serrano, Khari J. Tillery, San Francisco, CA, for amicus curiae Lawyers' Committee for Civil Rights of the San Francisco Bay Area, filed a brief in support of the plaintiff-appellee's petition for rehearing and rehearing en banc.
 Michael E. Tigar, Washington D.C., for amici curiae Michael E. Tigar and Charles J. Ogletree, Jr., filed a brief in support of the plaintiff-appellee's petition for rehearing and rehearing en banc.
 Appeal from the United States District Court for the Northern District of California; Claudia Wilken, District Judge, Presiding. D.C. No. CV-97-02566-CW.
 Before O'SCANNLAIN, TALLMAN, Circuit Judges, and KING, District Judge.*
 O'SCANNLAIN, Circuit Judge.
 
 ORDER
 
 1
 The opinion filed August 7, 2002 is hereby ordered amended as follows:
 
 
 2
 Slip Op. at 11465: Replace the counsel listings with the following:
 
 
 3
 "Fania E. Davis, Oakland, California, argued the cause for plaintiff-appellee and filed a brief; Darryl Parker, Seattle, Washington, was on the brief.
 
 
 4
 Felicia R. Reid, Curiale Dellaverson Hirschfeld Kelly & Kraemer, San Francisco, California, argued the cause for defendants-appellants and filed a brief.
 
 
 5
 Oren M. Sellstom, Susan K. Serrano, Khari J. Tillery, San Francisco, California, for amicus curiae Lawyers' Committee for Civil Rights of the San Francisco Bay Area, filed a brief in support of plaintiff-appellee's petition for rehearing and rehearing en banc.
 
 
 6
 Michael E. Tigar, Washington, D.C., for amici curiae Michael E. Tigar and Charles J. Ogletree, Jr., filed a brief in support of plaintiff-appellee's petition for rehearing and rehearing en banc."
 
 
 7
 Slip Op. at 11483 n.11. Add the following to the end of footnote 11:
 
 
 8
 "But the issue left unresolved at trial was whether his research and opinions were sufficiently reliable so that the trial judge would permit him to apply his theories to the facts and tell the jury that Dr. Rees' decision must have been racially motivated."
 
 
 9
 Slip Op. at 11484: Add the following footnote on line 13 following Velarde, 214 F.3d at 1210:
 
 
 10
 "Elsayed's petition for rehearing and rehearing en banc and the amici curiae brief filed by Charles J. Ogletree, Jr. and Michael E. Tigar in support of Elsayed's petition for rehearing and petition for rehearing en banc both argue that the panel should remand for an evidentiary hearing to determine reliability instead of remanding for a new trial. We decline to do so. See, e.g., Goebel v. Denver and Rio Grande Western R.R. Co., 215 F.3d 1083(10th Cir. 2000); Velarde, 214 F.3d at 1212. To remand for an evidentiary hearing post-jury verdict undermines Daubert's requirement that some reliability determination must be made by the trial court before the jury is permitted to hear the evidence. Otherwise, instead of fulfilling its mandatory role as a gatekeeper, the district court clouds its duty to ensure that only reliable evidence is presented with impunity. A post-verdict analysis does not protect the purity of the trial, but instead creates an undue risk of post-hoc rationalization. This is hardly the gatekeeping role the Court envisioned in Daubert and its progeny."
 
 
 11
 Slip Op. at 11485: Delete the second paragraph and replace with the following paragraph:
 
 
 12
 "To establish racial discrimination in the employment context, Elsayed must demonstrate that CSUH denied him tenure `because of' his race. See Costa v. Desert Palace, Inc., 299 F.3d 838, ___ slip op. at 10993 (9th Cir.2002) (en banc). While race need not be the sole factor in CSUH's decision, it must be `a motivating factor'. Id. Thus, we look to what evidence Elsayed presented, other than Dr. Wellman's testimony, that would tend to establish discrimination on the part of CSUH. Six CSUH professors testified that they believed Elsayed was qualified for a tenure appointment, and Dr. Hewitt, the outside expert hired to evaluate Elsayed, also recommended tenure despite his misgivings. The jury knew of Elsayed's instructional achievement, book-length dissertation, and article recommended for publication in AJISS, which, in fact, was never published. Finally, both arbitrations found procedural errors in the tenure process, although the second arbitration had been vacated in state court. Thus, Elsayed argues, there was plenty of evidence, even apart from Dr. Wellman's testimony, upon which the jury could have based its decision. We are not persuaded."
 
 
 13
 Slip Op. at 11485 n. 13: Delete footnote 13.
 
 
 14
 Except as herein modified, the panel has voted unanimously to deny the Petition for Rehearing. Judge O'Scannlain and Judge Tallman have voted to reject the Petition for Rehearing En Banc and Judge King so recommends.
 
 
 15
 The full court was advised of the Petition for Rehearing En Banc. A judge of this court requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration.
 
 
 16
 The petition for rehearing and the petition for rehearing en banc are DENIED.
 
 
 
 Notes:
 
 
 *
 The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 
 17
 REINHARDT, Circuit Judge, with whom Circuit Judges PREGERSON, HAWKINS, TASHIMA, THOMAS, McKEOWN, WARDLAW, W. FLETCHER, FISHER, PAEZ, and BERZON join, dissenting from denial of rehearing en banc:
 
 
 18
 This case is a civil rights action by a black professor who was denied tenure because of his race and national origin. A federal jury so found, and awarded him damages of $637,000.[1] In a wholly unprecedented action, a panel of this court has taken away the jury's verdict because the district judge failed to make explicit her reasons for allowing an expert witness to testify. The panel refused to consider whether the testimony qualified under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), or alternatively, to remand in order to allow the district judge to supply the findings it contends she failed to make. Instead, it ordered a new trial. The panel's action in this case is directly contrary to the practice we have followed in every other reported case of which we are aware.
 
 
 19
 After a nine day trial, the jury returned a verdict in favor of Doctor Mohamed Osman Elsayed Mukhtar, a professor of Mass Communications at California State University, Hayward ("the State University"). The jury found that the State University had unlawfully discriminated against Professor Elsayed. A panel of this court overturned the jury's verdict, because it believed that the district court had not made a procedurally proper Daubert ruling. It deprived Professor Elsayed of the jury's award, not because the expert who testified was not qualified to testify: the panel makes no such assertion. Rather, it set aside the jury's verdict solely because the district judge failed to state explicitly on the record the basis for her ruling with respect to the reliability of the expert testimony. Even though the panel did not find that Dr. Wellman's testimony did not meet the Daubert test of reliability, and thus could not conclude that the jury's verdict was unsupported by admissible evidence, it overturned that verdict. In doing so, it acted in a manner contrary to all precedent; it reversed a jury verdict without any basis for determining that it was affected by inadmissible evidence, and it violated the mandatory harmless error rule embodied in Federal Rule of Civil Procedure 61.
 
 
 20
 As a result, the parties and the court will be forced to undergo a cumbersome and wholly unnecessary second trial, to the great disadvantage of a civil rights litigant. Because the panel's opinion establishes a process for reversal of jury verdicts that is both at odds with our past practice and unduly burdensome on and unfair to litigants, counsel, and district judges, this court had an obligation to review its ruling en banc. I dissent from the failure to do so.
 
 
 21
 * The jury's verdict in this case was supported, in part, by the testimony of an expert witness with credentials recognized by all to be unimpeachable. Before Professor Elsayed's expert was allowed to testify, the district judge, attending to her obligations under Daubert, specifically requested briefing on the admissibility of the expert's testimony under the two factors specified by the Daubert Court: relevance and reliability. As the opinion admits:
 
 
 22
 In response to [the State University's] motion in limine to exclude Dr. Wellman's testimony, the district court ordered each side to submit Daubert briefs. Before ruling that Dr. Wellman's testimony was admissible, the district court reviewed two briefs in support of [the State University's] motion, three opposition briefs, two declarations from Dr. Wellman, excerpts from Dr. Wellman's deposition, his preliminary report, and his curriculum vitae.
 
 
 23
 299 F.3d at 1064.
 
 
 24
 The district judge thus reviewed the Daubert material before deciding to admit the expert's testimony "over [the State University's] reliability objections." Id. at 1064, 1066. It is true, as the panel states, that the district court did not explicitly place on the record an affirmative Daubert determination. However, it is equally clear that — after requesting briefing on that very issue and reviewing all of the materials submitted — the experienced and able district judge in fact made the Daubert determination the panel oddly finds missing.
 
 II
 
 25
 District judges occasionally make mistakes, just like court of appeals judges, and Justices of the Supreme Court. In the case of errors by district judges, the fundamental rule is that we do not reverse jury verdicts unless it is more likely than not that the error affected the verdict: that is, unless the error is prejudicial. To be reversible, the error must affect the substantial rights of the parties. Fed. R.Civ.P. 61.
 
 
 26
 Here, the panel misapplies the harmless error standard. The error cannot be prejudicial if the testimony of the expert witness consisted of evidence that the jury could properly have heard, had the court announced the reasons for its ruling. The district court's alleged failure to provide an explanation does not, in itself, injure the opposing party in any way or affect the verdict. Under the harmless error standard, reversible error could occur only if the jury heard evidence that the district judge did not have the discretion to let it hear. In short, the fact that the court may have erred with respect to the procedure by which it decided to admit Dr. Wellman's testimony cannot constitute reversible error. The district court's "error" could have affected the verdict in a way that was prejudicial to the State University only if the testimony the jury heard could not have been admitted by means of a proper procedural ruling. In the absence of a determination that the expert testimony did not qualify for admission under Daubert, its admission cannot be deemed to have constituted "harmful" error or to have affected the substantial rights of the parties.
 
 
 27
 In a case such as this, in which the panel, rightly or wrongly, decided that the district judge failed to make a Daubert determination in the proper manner (that is, by means of explicit findings and reasons), it had a number of choices, all of which are supported by our precedent. The panel could have presumed that the district court made an implicit Daubert determination based on its explicit request for and consideration of Daubert briefing before admitting the expert testimony. The panel could then have reviewed the district court's determination for an abuse of discretion, as we regularly do in the case of other evidentiary rulings. See, e.g., United States v. Daly, 974 F.2d 1215, 1217 (9th Cir.1992) (affording district court presumption of correctness when the "record, as a whole, indicates that the court properly balanced the evidence"); United States v. Ramirez-Jiminez, 967 F.2d 1321, 1326 (9th Cir.1992) (finding sufficient proof that the district court made an acceptable implicit Rule 403 determination because the government's trial memorandum "reminded the judge of the necessity of weighing probative value and prejudice"); United States v. Pena-Gutierrez, 222 F.3d 1080, 1090-91 (9th Cir.2000); United States v. Jackson, 84 F.3d 1154, 1159 (9th Cir.1996). Here, the facts regarding the district court's decision-making process clearly warranted such a resolution. Had the panel chosen this option, it could then have affirmed the district court on the ground that the determination to permit the expert testimony under Daubert was within the district judge's discretion. Alternatively, had the record, in the panel's view, mandated a different result, it could have concluded that the district judge abused her discretion. In the latter case, having determined that the testimony did not meet the Daubert standard, the panel could have properly reversed. Cf. United States v. Rahm, 993 F.2d 1405, 1412-15 (9th Cir.1993).
 
 
 28
 The panel also had another option. It could have refused to apply the presumption, and instead remanded to allow the district court to make its Daubert findings explicit, or to reconsider its ruling. The proper procedure in such case would have been for the panel to vacate the judgment conditionally, with instructions that allowed the district court to reinstate the judgment if on further review the court was convinced that the evidence was properly admitted. We have followed this procedure in criminal cases, in which the interest in reversing a judgment founded on inadmissible evidence is significantly stronger than in civil cases. This has been standard procedure not only when the district court has only implicitly considered the evidentiary issue, but even when the record affirmatively shows that the district court failed completely to consider the issue prior to the appeal. See, e.g., United States v. Cordoba, 104 F.3d 225, 229 (9th Cir.1997) ("In view of Daubert, we vacate the conviction and remand for the district court to conduct a particularized inquiry consistent with Daubert and to determine admissibility. If the district court concludes that [its ruling on the evidence would have been the same] after conducting the inquiry, it may reinstate the conviction."); United States v. Amador-Galvan, 9 F.3d 1414, 1418 (9th Cir. 1993) (remanding for a proper Daubert analysis, and instructing the district court to vacate a conviction if its Daubert analysis demands a different result than its earlier evidentiary ruling).
 
 
 29
 What a panel may not do is to reject all the applicable alternatives and reverse a jury decision reached after a lengthy trial, simply because, in its view, the district court failed to explain or state its reasons for its ruling on the Daubert issue. Here, the panel did not even deign to inquire whether the testimony was admissible under Daubert, and thus the only error it found — the alleged procedural error by the district judge — cannot justify a reversal. Contrary to all of the governing legal principles, the panel here took away a substantial verdict from a prevailing civil rights litigant without having any idea whether the testimony at issue was admissible under Daubert and without even permitting the district court to supply the reasons (that the panel rightly or wrongly deemed necessary) for its admission.
 
 
 30
 Assuming that the district court erred in failing to make the evidentiary rulings in the required manner (and I do not), the panel's remedy for the error represents a startling departure from our past practice. The decision this court now declines to take en banc stands for the proposition that an entirely new trial is required whenever a district judge fails to make requisite determinations supporting the admissibility of evidence (assuming that evidence is important to the outcome). The panel decision requires such a result even when the record before the district court fully supports the decision to admit the evidence, and even when the court's decision may have been entirely correct on the merits. Indeed, in this case, the panel orders a second trial under the most inappropriate of circumstances: Daubert determinations are often crucial to the disposition of the most complex and lengthy trials. In cases in which weeks or months (or even nine days) of trial are affected by an implicit evidentiary ruling that may well be correct, there is simply no justification for this court to impose so burdensome a process on the district court and the parties. Especially is this so when well established alternatives exist for reaching the merits of the admissibility issue — procedures that would save everyone involved immeasurable time, effort, and money, and that are necessary if we are to comply with the mandate of the Federal Rules.
 
 
 31
 All courts make aberrant decisions on occasion. Such decisions usually expire from benign neglect, although in some cases we purport to distinguish them, and in others we limit them to the facts of the case. The proper course here would have been for this court to go en banc and correct our error forthrightly. For whatever reason, those who urged that remedy could not garner the necessary thirteen out of twenty-four votes.
 
 
 32
 In the end, I would expect that this court will recognize that the panel's decision cannot survive. One victim of racial discrimination in employment has now also become the victim of unfair treatment in the courts. That will likely be the sole unfortunate consequence of this decision, deplorable as it may be. In any event, because the decision now becomes the law of the circuit, and because it is so arbitrary, unfair, and contrary to both precedent and the Federal Rules, I am compelled to dissent from this court's refusal to grant the petition for an en banc hearing.
 
 
 
 Notes:
 
 
 [1]
 The district judge reduced the amount by $15,000Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1061 n. 3 (9th Cir.2002).